**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JENELLE FRANCES SCOTT, on behalf of herself | : | |
| and all others similarly situated, | : | CIVIL ACTION |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| THE PHILADELPHIA HOUSING AUTHORITY, | : | NO.  10-4723 |
| THE PENNSYLVANIA INSTITUTE OF | : | |
| AFFORDABLE HOUSING PROFESSIONALS, | : | |
| PHA-TENANT SUPPORT SERVICES, INC., | : | |
| CARL GREENE, (individually and in his official | : | |
| capacity), DIANE ROSENTHAL, (individually and | : | |
| in her official capacity), KIRK DORN, | : | |
| (individually and in his official capacity), | : | |
| RICHARD ZAPPILE, (individually and in his | : | |
| official capacity), ASIA CONEY, (individually and | : | |
| in her official capacity), MICHAEL LEITHEAD, | : | |
| (individually and in his official capacity), | : | |
| CAROLYN CARTER, (individually and in her | : | |
| official capacity), LINDA STALEY, (individually | : | |
| and in her official capacity), JOHN DOE | : | |
| NUMBERS ONE THROUGH TEN, (individually | : | |
| and in their official capacity) | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM

BUCKWALTER, S.J.                                                                                      May 11, 2011

      Defendants Philadelphia Housing Authority, Pennsylvania Institute of Affordable

Housing Professionals, PHA-Tenant Support Services, Inc., Carl Greene, Diane Rosenthal, Kirk

Dorn, Richard Zappile, Asia Coney, Michael Leithead, Carolyn Carter, and Linda Staley

(collectively "Defendants") have filed the present Motions to Dismiss the Second Amended

Complaint of Plaintiff Jenelle Frances Scott ("Plaintiff") pursuant to Federal Rule of Civil

Procedure 12(b)(6). Also pending before the Court is Plaintiff's Motion for Leave to File an

Omnibus Reply Brief. For the following reasons, all Motions are granted.

## I. FACTUAL AND PROCEDURAL HISTORY

Plaintiff began working as a clerk typist for Defendant Philadelphia Housing Authority

("PHA") in October 1989. (Sec. Am. Compl. ¶ 2.) In September 2001, she became the

administrative assistant to Defendant Greene, who at the time was PHA's Executive Director.

(Id.) Plaintiff alleges that shortly after her promotion, "she was compelled to contribute money

and gifts to defendant, Greene, for parties that she was required to attend." (Id.) To celebrate

Defendant Greene's twelfth anniversary as Executive Director, Defendant Zappile, the PHA

Chief of Police, asked Plaintiff and other employees to contribute money for dinner at the Prime

Rib. (Id.) Payment was made via cash or check made out to Defendant Zappile. (Id.)

Previously, for Greene's 10th Anniversary party, Defendant Zappile sought donations for

Defendant PHA-Tenant Support Services, Inc. ("TSSI"), a PHA-affiliated non-profit designed to

provide services to assisted housing residents. (Id.) Over $38,000 was raised, but Plaintiff

alleges only $21,934 went to TSSI, while the remainder was spent on the party. (Id.)

Plaintiff also alleges that she "was forced to donate a portion of her paycheck" to

Defendant Pennsylvania Institute of Affordable Housing Professionals ("PIAHP"), which is a

non-profit corporation created by Defendant Greene. (Id. ¶ 3.) Plaintiff and other employees

were told by "representatives" of Defendant PHA that "the sole purpose of defendant, PIAHP,

was to lobby [the Department of Housing and Urban Development] in an attempt to prevent

funding cuts that were forcing defendant, PHA, to lay off employees." (Id.) According to

Plaintiff, however, Defendant PHA is prohibited from using federal funds for lobbying activities,

and Defendant Greene has not disclosed any lobbying activities since 2002. (Id. ¶¶ 32-34.) Defendant PHA allegedly required its employees to either contribute a portion of their paychecks or make an annual, lump sum contribution to Defendant PIAHP. (Id. ¶ 3.) Plaintiff alleges that Defendant PHA deducted money from her paycheck – and the paychecks of all other non-union employees – and diverted it to Defendant PIAHP. (Id. ¶ 36.) These deductions were made from 2006 until September 2010. (Id. ¶ 37.)

On November 17, 2010, Plaintiff filed her Second Amended Complaint on behalf of herself and all others similarly situated. In Count One, Plaintiff seeks injunctive and declaratory relief for civil rights violations committed by all Defendants. (Id. ¶¶ 38-43.) Plaintiff claims that Defendants violated her First, Fifth, and Fourteenth Amendment rights by "unlawfully and improperly collect[ing] monies and fees from the pay check of all nonunion employees under the pretext that the funds would be used for charitable purposes, but instead were improperly converted and used for the benefit of defendants and to promote political activities . . . ." (Id. ¶ 39.) Plaintiff also alleges that her due process rights were violated when Defendants used the money for their own personal gain and enrichment. (Id. ¶ 40.)

In Count Two, Plaintiff seeks damages for federal civil rights violations from Defendants PHA, PIAHP, and TSSI. (Id. ¶¶ 44-54.) According to Plaintiff, these Defendants allowed the individual Defendants to deduct improperly $2.50 each week from the pay of employees and contractors, (id. ¶ 45), allowed Defendant Greene to profit financially from the "unlawful taking" of Plaintiff's pay, (id. ¶ 49), and allowed Defendants Greene, Rosenthal, Dorn, Coney, Leithead, Carter and Staley to obstruct and interfere with investigations and audits in order to conceal illegal actions. (Id. ¶ 50.) Plaintiff claims that these actions deprived her of her constitutional

3

rights under the First, Fifth, and Fourteenth Amendments and violated 42 U.S.C. § 1983. (Id. ¶ 52.)

In Count Three, Plaintiff alleges that all Defendants violated the Moving to Work Demonstration Program ("MTW Program"), which requires Defendant PHA to report annually its expenditures, and prohibits the use of federal funds for lobbying. (Id. ¶¶ 56-57.) Plaintiff claims that Defendant Greene and "those he conspired with solicited and coerce[d] plaintiff and Class members into making contributions to PIAHP and other nonprofit entities on the pretext that the funds would be used for lobbying efforts in violation" of the MTW Program. (Id. ¶ 59.) As a result the MTW Program violations, Plaintiff alleges that she and fellow class members suffered loss of earnings and employment benefits, and experienced emotional distress. (Id. ¶¶ 60-61.)

In Count Four, Plaintiff includes supplemental state law claims for conversion, violations of Pennsylvania's Wage Payment and Collection Law, and the "Anti-Macing Statute." (Id. ¶ 64.) Finally, Plaintiff seeks punitive damages in connection with each cause of action cited in the Second Amended Complaint. (Id. ¶ 67.)

On January 17, 2011, Defendants PHA, PIAHP, and Kirk Dorn collectively filed a Motion to Dismiss, and the arguments contained therein were incorporated and adopted via separate Motions to Dismiss filed on the same day by Defendants Coney and TSSI, Defendant Carter, and Defendant Rosenthal. Motions to Dismiss were also filed by Defendant Staley on January 17, 2011, Defendant Zappile on January 17, 2011, Defendant Leithead on January 18, 2011, and Defendant Greene on January 18, 2011. Plaintiff filed an Omnibus Response in Opposition to Defendants' Motions to Dismiss on March 8, 2011, and Replies were filed by

Defendants PHA, PIAHP, and Dorn on March 21, 2011, Defendant Greene on March 22, 2011, Defendant Staley on March 22, 2011, Defendant Zappile on March 23, 2011, Defendants Coney and TSSI on March 24, 2011, Defendant Rosenthal on March 24, 2011, and Defendant Carter on March 24, 2011.  Plaintiff filed a Motion for Leave to File an Omnibus Reply Brief on March 28, 2011.[1]

## II.     STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted.  FED. R. CIV. P. 12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005).  In Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), the United States Supreme Court recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Id. at 555.  It emphasized that it would not require a "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face."  Id. at 570.

In the subsequent case of Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), the Supreme Court enunciated two fundamental principles applicable to a court's review of a motion to dismiss for failure to state a claim.  First, it noted that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of

---

[1]  In her Reply Brief, Plaintiff asks the Court to strike Defendants' Reply Briefs because Defendants failed to request leave before filing these Replies.  (Pl.'s Reply 4-5.)  Pursuant to the Local Rules of Civil Procedure, however, this Court has the discretion to permit further briefing if it deems it appropriate.  E.D. PA. CIV. R. 7.1(c).  Because Plaintiff has not shown cause for striking Defendants' Reply Briefs, and because the Replies have aided the Court in ruling on the current Motions, Plaintiff's request is denied.

the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1949. Thus, although "[Federal] Rule [of Civil Procedure] 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 1950. Second, the Supreme Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

Notwithstanding the foregoing, nothing in Twombly or Iqbal has altered some of the fundamental underpinnings of the Rule 12(b)(6) standard of review. Arner v. PGT Trucking, Inc., No. CIV.A.09-0565, 2010 WL 1052953, at *2 (W.D. Pa. Mar. 22, 2010); Spence v. Brownsville Area Sch. Dist., No. CIV.A.08-0626, 2008 WL 2779079, at *2 (W.D. Pa. July 15, 2008). Federal Rule of Civil Procedure 8 requires only a short and plain statement of the claim showing that the pleader is entitled to relief and need not contain detailed factual allegations. FED. R. CIV. P. 8; Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). Further, the court must "accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff." Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006). Finally, the court must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Pinkerton v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002).

III. DISCUSSION

Many of the factual and legal issues raised in each Defendant's Motion to Dismiss are

interrelated. Therefore, rather than address each Motion individually, the Court discusses the arguments made in those Motions in the context of the relevant claims contained in Plaintiff's Second Amended Complaint.

### A.     Plaintiff's First Amendment Claim

The United States Supreme Court has held that "[t]he right of freedom of thought and of religion as guaranteed by the Constitution against State action includes both the right to speak freely and the right to refrain from speaking at all . . . ." W. Virginia State Bd. of Educ. v. Barnette, 319 U.S. 624, 645 (1943) (Murphy, J., concurring). As such, "[g]overnment action that requires stating a particular message favored by the government violates the First Amendment right to refrain from speaking." Miller v. Mitchell, 598 F.3d 139, 151 (3d Cir. 2010) (citing C.N. v. Ridgewood Bd. of Educ., 430 F.3d 159, 187 (3d Cir. 2005)).

While the Supreme Court has found that "expressive conduct is protected under the First Amendment," it has rejected "'the view that an apparent limitless variety of conduct can be labeled "speech" whenever the person engaging in the conduct intends thereby to express an idea.'" Montanye v. Wissahickon Sch. Dist., 218 Fed. Appx. 126, 130 (3d Cir. 2007) (quoting United States v. O'Brien, 391 U.S. 367, 376 (1968)). "Rather, to determine whether a particular action or pattern of conduct constitutes speech protected under the First Amendment, we must ask whether 'an attempt to convey a particularized message was present, and whether the likelihood was great that the message would be understood by those who viewed it.'" Id. (quoting Texas v. Johnson, 491 U.S. 397, 404 (1989)).

In this case, the Second Amended Complaint states that Plaintiff's First Amendment rights were violated when Defendants "improperly collect[ed] monies and fees from [her

paycheck] under the pretext that the funds would be used for charitable purposes, but instead were improperly converted and used for the benefit of defendants and to promote political activities." (Sec. Am. Compl. ¶ 39; see also id. ¶ 45.) Defendants seek to dismiss this claim on the ground that the alleged attempt to lobby the federal government was government speech, "and a First Amendment challenge to that speech is barred by Supreme Court precedent." (Defs. PHA, PIAHP, and Dorn's Mem. Supp. Mot. Dismiss ("Def. PHA's Mem.") 23.)

Plaintiff, however, insists that Defendants have misconstrued the essence of her cause of action. According to Plaintiff, she is not claiming that her First Amendment rights were infringed when Defendants used her money to engage in lobbying activities. (Pl.'s Resp. Opp'n 19.) Rather, she argues that Defendants' lobbying efforts were a pretext to hide their true motive, which was "to force employees to contribute to a slush fund that would enable the Defendants to use monies for their own personal gain. In other words, she was not compelled to speak, but rather to subsidize a private message with which she disagreed." (Id.)

Of course, as Defendants point out, "'personal gain' is not speech." (Defs. PHA, PIAHP, and Dorn's Reply ("Def. PHA's Reply") 12.) Furthermore, the Court is unable to discern what Plaintiff is referring to when she says she was forced "to subsidize a private message with which she disagreed." Plaintiff merely contends that Defendants misled her about the nature of a fund to which she was compelled to contribute money, and then unlawfully spent that money for their own benefit. Even if all of these allegations are true, Plaintiff has failed to demonstrate that Defendants attempted to convey a particularized message that violated her right to refrain from speaking. Defendants' Motions to Dismiss Plaintiff's First Amendment claim are granted.

### B.    Plaintiff's Fifth Amendment Takings Clause Claim[2]

The Takings Clause of the Fifth Amendment to the Constitution states, in relevant part: "nor shall private property be taken for public use, without just compensation." U.S. CONST. amend. V.  The "classic" Takings Clause case involves "a transfer of property to the State or to another private party by eminent domain." Stop the Beach Renourishment, Inc. v. Florida Dep't of Envtl. Prot., 130 S. Ct. 2592, 2601 (2010).  By contrast, a "regulatory taking" occurs when a "government regulation of private property [is] . . . so onerous that its effect is tantamount to a direct appropriation or ouster." Lingle v. Chevron U.S.A. Inc., 544 U.S. 528, 537 (2005).  A regulation violates the Takings Clause in the following circumstances: (1) "where government requires an owner to suffer a permanent physical invasion of her property;" or (2) where the owner is completely deprived of the property's economically beneficial use. Id. at 538 (internal citations omitted).

"[W]hile a taking may occur when a specific fund of money is involved, the mere imposition of an obligation to pay money . . . does not give rise to a claim under the Takings Clause of the Fifth Amendment." Commonwealth Edison Co. v. United States, 271 F.3d 1327,

---

[2]  There was some initial confusion among the parties as to the exact nature of Plaintiff's Fifth Amendment claim.  Defendants believed Plaintiff was alleging a violation of the Fifth Amendment's Due Process Clause, and moved for summary judgment on that claim on the ground that Plaintiff failed to allege any wrongdoing by the federal government.  (Def. PHA's Mem. 25.)  Plaintiff makes clear in her Response in Opposition, however, that she is actually stating a claim under the Fifth Amendment's Takings Clause.  (Pl.'s Resp. Opp'n 12-13.)  The Second Amended Complaint states that Defendants PHA, PIAHP, and TSSI "allowed defendants Greene [sic] to financially profit from the unlawful taking of plaintiff and plaintiff class' pay in violation of the First, Fifth, and Fourteenth Amendments . . . ."  (Sec. Am. Compl. ¶ 49.)  While Plaintiff certainly could have articulated her cause of action in more explicit terms, the Court finds that she has sufficiently pleaded a Takings Clause claim by alleging an "unlawful taking" in violation of the Fifth Amendment.

1340 (Fed. Cir. 2001).  Furthermore, "a charge of theft or misappropriation of money is an issue of tortious or criminal conduct, whereas a Takings claim arises only when the property is legally taken, for example by Act of Congress or by eminent domain."  Sanders v. United States, 132 Fed. Appx. 378, 380 (Fed. Cir. 2005).

Here, Plaintiff contends that the deductions from her weekly paychecks "were uncompensated 'takings' and were not attributable to the purported reasons give by Defendants, but rather for the benefit of the individual Defendants.  Thus, the PHA took the private property of the employees; albeit, deductions from their paycheck and diverted the money for a 'private' cause – their own."  (Pl.'s Resp. Opp'n 12.)  She states that the money taken from her and her fellow class members was used for "improper purposes."  (Id. at 13.)  Defendants argue that Plaintiff's Takings Clause claim should be dismissed because it is unsupported by existing law.  (Def. PHA's Reply 8-9.)

It is true that there are few cases that have specifically addressed whether the Takings Clause applies in this context.  Those that have considered the issue, however, have found that withheld wages do not give rise to a Takings Clause claim.  In Ward v. Ryan, 623 F.3d 807 (9th Cir. 2010), the appellant was an inmate in an Arizona prison who received compensation for work he performed while incarcerated.  Id. at 809.  Pursuant to a statute, a portion of his wages was withheld by the Department of Corrections, and would not be remitted to him until he was released.  Id.  The Ninth Circuit found that although the inmate had a statutorily-created property interest in his wages, he did not have a claim under the Takings Clause because "statutes granting inmates a protected property interest in their wages may also limit and define the contours of such interest."  Id. at 811; see also Rudolph v. Cuomo, 916 F. Supp. 1308, 1318 (S.D.N.Y. 1996)

(no Takings Clause violation where statute allowed for withholding of wages until prisoners were released).

A slightly different factual scenario involving a prisoner's wages was addressed by the court in Fagan v. Werholtz, No. CIV.A.10-3063, 2010 WL 2291737, at *1 (D. Kan. June 3, 2010). In Fagan, the prisoner alleged that his rights were violated under the Takings Clause when a portion of his earnings was deducted to pay for his room and board. Id. The court found that the prisoner's "claim of funds being improperly withheld from his wages encompasses only alleged violations of state law. Plaintiff's allegation of erroneous deductions . . . is [insufficient] to establish that any private property of plaintiff was taken for public use without just compensation, for purposes of presenting a viable claim under the Takings Clause." Id. (internal citations omitted).

Several cases have also addressed the application of the Takings Clause to unpaid wages in the context of employment with the federal government. In Adams v. United States, 391 F.3d 1212, 1225 (Fed. Cir. 2004), the Federal Circuit held "that a statutory right to be paid money, at least in the context of federal employee compensation and benefit entitlement statutes, is not a property interest for purposes of the Takings Clause." Id. at 1225. Likewise, in Williams v. United States, 86 Fed. Cl. 594 (2009), the court relied on Adams in concluding that "[n]either a government salary nor military benefits . . . are cognizable property interests for purposes of the Takings Clause." Id. at 605-06.

In sum, the weight of authority from courts that have considered this issue demonstrates that the Takings Clause is inapplicable when a plaintiff sues for unpaid wages. Furthermore, even if, in abstract terms, the withholding of wages by a state entity could be considered an

unconstitutional taking of property, the Court finds that, in this particular case, the nature of

Plaintiff's allegations removes her claim from the realm of Takings Clause jurisprudence.  As

noted above, "a Takings claim arises only when the property is *legally* taken," whereas an

allegation of misappropriation or theft is a matter of criminal or tortious conduct.  <u>Sanders</u>, 132

Fed. Appx. at 380 (emphasis added); <u>see also</u> <u>Adams v. United States</u>, 20 Cl. Ct. 132, 139 (1990)

("[T]he Takings Clause only provides compensation for damages caused by Government acts in

furtherance of a lawful public purpose."); <u>Slider v. City of Oakland</u>, No. CIV.A.08-4847, 2010

WL 2867807, at *8 (N.D. Cal. July 19, 2010) ("[I]f defendants in fact wrongfully converted

plaintiff's belongings as plaintiff alleges, the conversion will most likely have been for their own

private use, for which state tort law [rather than the Takings Clause] provides recourse.").  Here,

Plaintiff alleges that Defendants improperly deducted money from her paycheck for their own

private, individual benefit.  (Pl.'s Resp. Opp'n 12.)  She does not contend that any of the money

was used for a lawful public purpose.  If Plaintiff's allegations are true, there may have been a

cause of action under Pennsylvania state law to recover the unpaid wages, but the Court finds

that Defendants' alleged actions do not constitute an unlawful "taking" within the meaning of the

Fifth Amendment.  Defendants' Motions to Dismiss Plaintiff's Takings Clause claim are granted.

### C.    Plaintiff's Fourteenth Amendment Due Process Claim

The Third Circuit has held that "[t]o prevail on a non-legislative substantive due process

claim, 'a plaintiff must establish as a threshold matter that he has a protected property interest to

which the Fourteenth Amendment's due process protection applies.'"  <u>Nicholas v. Pa. State</u>

<u>Univ.</u>, 227 F.3d 133, 139-40 (3d Cir. 2000) (quoting <u>Woodwind Estates, Ltd. v. Gretkowski</u>, 205

F.3d 118, 123 (3d Cir. 2000), *overruled on other grounds by* <u>United Artists Theatre Circuit, Inc.</u>

v. Twp. of Warrington, 316 F.3d 392, 399-400 (3d Cir. 2003)).  The issue of whether a certain property interest is entitled to protection under the Substantive Due Process Clause "is not determined by reference to state law, but rather depends on whether that interest is 'fundamental' under the United States Constitution."  Nicholas, 277 F.2d at 140.  The Third Circuit has held that public employment is not a fundamental property interest entitled to substantive due process protection.  Id. at 142.

In this case, Plaintiff claims that all Defendants violated her and her fellow class members' due process rights "when they exercised selectivity with the intent and purpose of compelling certain employees to pay funds for the personal gain and enrichment of defendants . . . ."  (Sec. Am. Compl. ¶ 40.)  She also alleges that her due process rights were violated by Defendants PHA, PIAHP, and TSSI by permitting the "practice and custom of automatically deducting $2.50 each week from the pay of employees . . . under the pretext that the monies would be used for charitable contributions when in fact the funds were used to lobby, to promote political activities and for the personal enrichment of the defendants . . . ."  (Id. ¶ 45.)

Defendants argue that this claim should be dismissed because Plaintiff has failed to identify a "fundamental right" protected by the Substantive Due Process Clause.  (Def. PHA's Mem. 20-21.)  More specifically, they contend that because there is no constitutional right to public employment, it therefore follows that Plaintiff's "claim of right to certain terms and conditions of public employment – i.e., the right to be free from wage withholding – cannot be deemed more 'fundamental' than the privilege of public employment itself."  (Id. at 21.)  In her Response in Opposition, Plaintiff does not address Defendant's argument that she has failed to allege a violation of a fundamental right.  (Pl.'s Resp. Opp'n 14-17.)  Rather, she seems to

suggest that her substantive due process rights were violated by mere virtue of the fact that Defendants' behavior was "conscience-shocking." (Id.)

The Court agrees with Defendants that Plaintiff has failed to state a substantive due process claim. As noted above, substantive due process rights are not determined by state law, Nicholas, 277 F.2d at 140, and the Third Circuit has been reluctant to expand the doctrine to cases that do not involve "the most fundamental of civil liberties." See Armbruster v. Cavanaugh, No. CIV.A.10-2009, 2011 WL 339534, at *3 (3d Cir. Feb. 4, 2011). The case that appears to be most analogous to the current matter is the Third Circuit's opinion in Reich v. Beharry, 883 F.2d 239 (3d Cir. 1989). In Reich, the appellant was a lawyer hired to do legal work for the county of Washington, Pennsylvania. Id. at 239. When the county failed to compensate him for his services, the lawyer alleged that he was deprived of his property in violation of his substantive due process rights. Id. at 239-40. The Third Circuit rejected this claim, finding that "the only interest that [the lawyer] had . . . was his interest in avoiding delay in the receipt of payment of a bill for professional services rendered. We can think of no basis for according substantive due process protection to this interest . . . ." Id. at 244-45. Similarly, in this case, the essence of Plaintiff's claim is that her substantive due process rights were violated when Defendant PHA failed to pay her the full amount of wages she had earned. While Plaintiff's allegations may have given rise to a claim under Pennsylvania state law, the Court finds that she has no fundamental, constitutionally-protected right to be paid wages by a state agency. Defendants' Motions to Dismiss Plaintiff's Fourteenth Amendment Due Process Claims

are granted.[3]

### D.    Plaintiff's Claim Under the Moving to Work Demonstration Program

The Supreme Court has recognized that "§ 1983 actions may be brought against state actors to enforce rights created by federal statutes as well as by the Constitution." Gonzaga Univ. v. Doe, 536 U.S. 273, 279 (2002) (citing Maine v. Thiboutot, 448 U.S. 1 (1980)). In analyzing claims made pursuant to federal statutes, however, the Court has stated "that unless Congress 'speak[s] with a clear voice,' and manifests an 'unambiguous' intent to confer individual rights, federal funding provisions provide no basis for private enforcement by § 1983." Id. (quoting Pennhurst State Sch. & Hosp. v. Halderman, 451 U.S. 1, 17, 28, & n.21 (1981)). To determine whether a particular statutory provision confers a federal right, courts must consider three factors: (1) whether Congress intended for the provision in question to benefit the plaintiff; (2) whether the plaintiff has demonstrated that the right purportedly "protected by the statute is not so 'vague and amorphous' that its enforcement would strain judicial competence"; and (3) whether the statute unambiguously imposes "a binding obligation on the States." Blessing v. Freestone, 520 U.S. 329, 340-41 (1997) (citations omitted).

Plaintiff alleges that, in 2002, Defendant PHA received $342,000,000 as part of the MTW

---

[3] Defendant Staley moves to dismiss any procedural due process claim made by Plaintiff. (Def. Staley's Mem. Supp. Mot. Dismiss 10-11.) Furthermore, both Defendants Staley and Greene argue that Plaintiff has failed to state a due process claim for deprivation of liberty interest in reputation. (Id. at 12-13; Def. Greene's Mem. Supp. Mot. Dismiss 11-12). The Court notes that it is not even clear whether Plaintiff has alleged a procedural due process or deprivation of liberty interest in reputation claim. The Second Amended Complaint merely states that Defendants' "wrongful and deceptive acts" deprived Plaintiff of her "property and liberty without due process of law." (Sec. Am. Compl. ¶ 4). Moreover, Plaintiff's Response in Opposition only addresses Defendants' substantive due process arguments. Therefore, if Plaintiff did in fact intend to assert a procedural due process or deprivation of liberty interest claim, these claims are dismissed.

Program. (Sec. Am. Compl. ¶ 30.)  The MTW Program was created

> to give public housing agencies and the Secretary of Housing and Urban Development the
> flexibility to design and test various approaches for providing and administering housing
> assistance that: reduce cost and achieve greater cost effectiveness in Federal expenditures;
> give incentives to families with children where the head of household is working, seeking
> work, or is preparing for work by participating in job training, educational programs, or
> programs that assist people to obtain employment and become economically
> self-sufficient; and increase housing choices for low-income families.

Omnibus Consolidated Rescissions and Appropriations Act of 1996, Pub. L. 104-134, § 204, 110

Stat. 1321, 1321-281 (1996).  The MTW Program empowers the Secretary of Housing and Urban

Development to "provide training and technical assistance . . . and conduct detailed evaluations

of up to 15 [housing] agencies in an effort to identify replicable program models promoting the

purpose of the demonstration."  Id. at 1321-282.  It also authorizes housing agencies to combine

the assistance they receive pursuant to sections 8, 9, and 14 of the United States Housing Act of

1937 in order "to provide housing assistance for low-income families, . . . and services to

facilitate the transition to work on such terms and conditions as the agency may propose and the

Secretary may approve."  Id.

According to Plaintiff, participation in the MTW Program prohibits Defendant PHA from

using federal funds for lobbying activity.  (Sec. Am. Compl. ¶ 57.)  She alleges that Defendant

Greene and "those he conspired with solicited and coerce[d] plaintiff and Class members into

making contributions to PIAHP and other nonprofit entities on the pretext that the funds would

be used for lobbying efforts in violation" of the MTW Program.  (Id. ¶ 59.)  As a result of the

MTW Program violations, Plaintiff contends that she and her fellow class members suffered loss

of earnings and employment benefits, and experienced emotional distress.  (Id. ¶¶ 60-61.)

Defendants argue that Plaintiff's claim must fail because Congress never conferred upon

any citizen or housing authority employee a private cause of action under § 1983 for violations of the MTW Program. (Def. PHA's Mem. 13.) The Court agrees. Under the first prong of the test set forth in Blessing, a plaintiff attempting to enforce a right created by a federal statute must establish that the statutory provision in question was enacted for the plaintiff's benefit. Blessing, 520 U.S. at 340. As noted above, the MTW Program was created to give public housing agencies the flexibility to test various approaches for reducing costs and delivering services to individuals and families who receive housing assistance. § 204, 110 Stat. at 1321-281. There is nothing in the MTW Program that confers any rights upon the employees of PHA. Indeed, Plaintiff herself admits that "there is no specific language in the [Appropriations] Act which refers to 'employees.'" (Pl.'s Resp. Opp'n 31.) Rather, she contends that because Defendant PHA used funds it received in conjunction with the MTW Program to pay its employees, she therefore qualifies as a beneficiary. Id. The Supreme Court, however, has explicitly rejected the idea "that our cases permit anything short of an unambiguously conferred right to support a cause of action brought under § 1983. . . . Accordingly, it is *rights*, not the broader or vaguer 'benefits' or 'interests,' that may be enforced under the authority of that section." Gonzaga, 536 U.S. at 283. Therefore, the fact that Plaintiff may have indirectly benefitted from Defendant PHA's involvement in the MTW Program does not give rise to a cause of action under § 1983.[4] Rather,

_____

[4] Plaintiff also argues that the United States Housing Act, 42 U.S.C. § 1437 *et seq.*, and "the governing regulations as they relate to public housing" provide her with a private cause of action. (Pl.'s Resp. Opp'n 24.) In support of this argument, Plaintiff cites to Farley v. Philadelphia Hous. Auth., 102 F.3d 697, 704 (3d Cir. 1996), which held that tenants of public housing have enforceable rights under the United States Housing Act. (Pl.'s Resp. Opp'n 24.) Plaintiff, however, is not a tenant of public housing, and there is nothing in Farley that provides an employee of a public housing agency with the right to sue for violations of the MTW Program.

Finally, Plaintiff argues that she has a cause of action under Defendant PHA's MTW

she must identify a federally-conferred right that was violated when Defendants allegedly used her money for lobbying activities.  Because Plaintiff has not done so, Defendants' Motions to Dismiss her claim under the Moving to Work Demonstration Program are granted.[5]

**E.      Plaintiff's Claim Under Pennsylvania's Wage Payment and Collection Law**

Pennsylvania's Wage Payment and Collection Law ("WPCL") states that "[e]very employer shall pay all wages, other than fringe benefits and wage supplements, due to his employes [sic] on regular paydays designated in advance by the employer." 43 PA. CONS. STAT. § 260.3(a).  The law provides that "[a]ny employe or group of employes [sic], labor organization or party to whom any type of wages is payable may institute actions provided under this act." Id. § 260.9a(a).  Such actions, however, may only be brought against those who qualify as employers under the act.  The WPCL defines "employers" as "every person, firm, partnership, association, corporation, receiver or other officer of a court of this Commonwealth and any agent or officer of any of the above-mentioned classes employing any person in this Commonwealth." Id. § 260.2a. Both the state courts of Pennsylvania and the Eastern District of Pennsylvania have held that municipal corporations are not "employers" for the purposes of the WPCL.  See Huffman v. Borough of Millvale, 591 A.2d 1137, 1139 (Pa. Commw. Ct. 1991) ("There is a clear distinction between municipal and private corporations and, if the legislature wished that municipal

---

Agreement with the Department of Housing and Urban Development, (Pl.'s Resp. Opp'n 19, 30-31), but has not identified any provision that allows an individual employee to recover damages for violations of that Agreement.

[5] Defendants argue that, because there is no private cause of action, the Court should strike from the Second Amended Complaint all allegations pertaining the MTW Program.  (Def. PHA's Mem. 18-19.)  Because the Court is dismissing the Second Amended Complaint, it declines to address this argument.

corporations be covered by the [WPCL], it could have easily included them."); <u>Gallaher v. Goldsmith</u>, 213 F. Supp. 2d 496, 499 (E.D. Pa. 2002) ("Municipal corporations are not included in [the WPCL] definition [of employer] and therefore courts have determined that the [WPCL] does not apply to entities such as boroughs, school districts, and counties.") (citations omitted).

Plaintiff alleges that Defendants violated the WPCL when they unlawfully withheld her wages. (Sec. Am. Compl. ¶¶ 49, 64.) Defendants argue that Plaintiff has failed to state a claim because PHA, her employer, is a municipal corporation that is not subject to the WPCL. (Def. PHA's Mem. 26-27.)[6] Plaintiff does not dispute that Defendant PHA is a municipal corporation. Indeed, her Second Amended Complaint expressly states that "Defendant, PHA, is a body corporate, exercising the public powers of the Commonwealth of Pennsylvania as an agency thereof . . . ." (Sec. Am. Compl. ¶ 8.) Rather, she responds to Defendants' argument by citing to <u>Carstetter v. Adams Cnty. Transit Auth.</u>, No. CIV.A.1:06-1993, 2008 WL 2704600, at *32 (M.D. Pa. Feb. 14, 2008), in which a magistrate judge in the Middle District of Pennsylvania rejected the holding in <u>Huffman</u>, and found that the WPCL does apply to municipal corporations. (Pl.'s Resp. Opp'n 38 (citing <u>Carstetter</u>, 2008 WL 2704600, at *32).) Plaintiff fails to note, however, that the magistrate judge's report and recommendation in <u>Carstetter</u> was expressly overruled by the District Court for the Middle District of Pennsylvania:

> The court is unable to adopt the [magistrate judge's] report with respect to this issue. The Pennsylvania Commonwealth Court has exempted municipal entities from the WPCL since it first confronted this issue in 1991 . . . . Moreover, [the plaintiff] has not cited any case since 1991 that applied the WPCL to a municipal corporation, and the court's independent research has produced none. In light of this clear jurisprudential trend, the

---

[6] Defendant PIAHP moves to dismiss Plaintiff's claim against it based on the fact that it never employed her. (Def. PHA's Mem. 27.) Plaintiff has conceded to dismissal of the claim against Defendant PIAHP. (Pl.'s Resp. Opp'n 39.)

court concludes that municipal authorities are exempt from the WPCL.

Carstetter v. Adams Cnty. Transit Auth., No. CIV.A.1:06-1993, 2008 WL 2704596, at *14 (M.D. Pa. July 8, 2008) (internal citations and footnotes omitted).[7]

Because Defendant PHA is a municipal corporation, and in light of the fact that Pennsylvania state courts, the Middle District of Pennsylvania, and the Eastern District of Pennsylvania[8] have consistently held that the WPCL does not apply to municipal corporations, Defendants' Motions to Dismiss Plaintiff's WPCL claim are granted.[9]

## F.     Plaintiff's Claim Under Pennsylvania's Anti-Macing Act

The Second Amended Complaint asserts a claim under Pennsylvania's Anti-Macing Act, 25 Pa.C.S. § 2374.  (Sec. Am. Compl. ¶¶ 4, 64.)  The Anti-Macing Act prohibits public officers from demanding political contributions from their subordinates.  25 PA. CONS. STAT. § 2374. Defendants have moved to dismiss this claim, (Def. PHA's Mem. 28-29), and Plaintiff has stated

---

[7] Plaintiff also cites to Gingrich v. City of Lebanon, 32 Pa. D & C.2d 726 (Pa. Ct. Com. Pl. 1963).  (Pl.'s Resp. Opp'n 19.)  While Gingrich held that the WPCL is applicable to municipal corporations, 32 Pa. D & C.2d at 729, its holding has not been followed in subsequent cases.  See Carstetter, 2008 WL 2704596, at *14 n.17 (M.D. Pa. July 8, 2008) ("The court has not identified any case that followed the holding of Gingrich with respect to the WPCL."); Huffman, 591 A.2d at 1139 ("Municipal corporations . . . are not included within the [WPCL's] definition of 'employer' . . . .").

[8] The Western District of Pennsylvania also seems to have concluded that the WPCL does not apply to municipal entities.  See Capo v. Pittsburgh Bd. of Public Educ., No. CIV.A.2:04-1473, 2007 WL 760513, at *7, (W.D. Pa. Mar. 8, 2007) (holding that an employee of a school district could not bring a WPCL claim against his employer).

[9] Defendants Staley, Zappile, and Leithead raise the separate argument that, even if Defendant PHA is an "employer" for purposes of the WPCL, they are not liable because they lacked decision-making authority with respect to Plaintiff's wages.  (Def. Staley's Mem. Supp. Mot. Dismiss 16-18; Def. Zappile's Mem. Supp. Mot. Dismiss 8-10; Def. Leithead's Mem. Supp. Mot. Dismiss 13-14.)  Because the Court is dismissing Plaintiff's WPCL claim on the ground that her employer is exempt from the law, it declines to address this argument.

20

that she does not contest such dismissal. (Pl.'s Resp. Opp'n 39.) As such, Defendants' Motions to Dismiss Plaintiff's Anti-Macing Act claim are granted.

### G. Plaintiff's Conversion Claim

In Pennsylvania, "conversion is the 'deprivation of another's right of property, or use or possession of a chattel, or other interference therewith, without the owner's consent and without legal justification.'" Universal Premium Acceptance Corp. v. York Bank & Trust Co., 69 F.3d 695, 704 (3d Cir. 1995) (quoting Cenna v. United States, 402 F.2d 168, 170 (3d Cir. 1968)). "Money may be the subject of a conversion," but "only where the plaintiff had a property interest in the money at the time of the alleged conversion." Kia v. Imaging Sciences Int'l, Inc., 735 F. Supp. 2d 256, 270 (E.D. Pa. 2010) (citations omitted). Furthermore, "[t]he rights to this money must have belonged originally to the plaintiff rather than acquired through a contract." Duane Morris, LLP v. Todi, No. CIV.A.001980, 2002 WL 31053839, at *5 (Pa. Ct. Com. Pl. Sept. 3, 2002).

Here, Plaintiff asserts that Defendants are liable for conversion by virtue of the fact that they improperly withheld her wages. (Sec. Am. Comp. ¶¶ 4, 64.) Defendants argue that because Plaintiff never had control or possession over her unpaid wages, she has not satisfied the elements of a conversion claim. (Def. PHA's Mem. 31.) Plaintiff responds that she has stated a claim for conversion because the wages were withheld without her consent, that some class members made contributions to Defendants after they had already received their wages, and that she need only have had constructive – not actual – possession of her wages at the time they were converted. (Pl.'s Resp. Opp'n 40.)

While Pennsylvania law clearly states that money may be the subject of a conversion,

there do not appear to be any recent civil cases that address whether this rule applies to unpaid wages. The case law that does exist, however, indicates that conversion is not the appropriate cause of action in this context. In <u>Commonwealth v. Mitchneck</u>, 198 A. 463 (Pa. Super. 1938), for example, the court considered an appeal of a criminal conviction for fraudulent conversion. <u>Id.</u> at 463. The defendant was an employer whose employees assigned a portion of their unpaid wages to the owner of a store at which they made purchases. <u>Id.</u> While the defendant initially agreed to pay the withheld wages to the store owner, he later refused to do so, and was indicted for fraudulent conversion. <u>Id.</u> The <u>Mitchneck</u> court made two findings relevant to this case. It found that the "[d]efendant's liability for the unpaid wages due his employees was, and remained, civil, not criminal." <u>Id.</u> at 464. More importantly, it found that

> [t]he defendant in the present case had not received, nor did he have in his possession, any money belonging to his employees. True he owed them money, but that did not transfer to them the title to and ownership of the money. His deduction from their wages of the amounts of the store bills . . . did not change the title and ownership of the money thus withheld.

<u>Id.</u>

Other jurisdictions that have considered the issue have also held that a claim for conversion does not arise when an employee has not been paid his or her full wages. The District of Nevada, analyzing such a claim under Delaware law, concluded that

> Delaware would not recognize a conversion claim in these circumstances because the unpaid wages constitute an indebtedness that Defendants may discharge by the payment of money generally. Delaware does not recognize a cause of action for conversion based on money that is not specifically identifiable, such as a particular coin or fund, or monies Plaintiff deposited with Defendant which Defendant has failed to return. Plaintiff's unpaid wages are not specifically identifiable funds but represent a general indebtedness.

<u>In re Wal-Mart Wage & Hour Emp't Practices</u>, 490 F. Supp. 2d 1091, 1102 (D. Nev. 2007).

Instead of conversion, most jurisdictions have held that the appropriate cause of action in this context is a claim for breach of contract. See, e.g., Temmen v. Kent-Brown Chevrolet Co., 605 P.2d 95, 99 (Kan. 1980) ("An employer's withholding of an employee's wages without written authorization . . . constitutes a breach of the employment contract."); Bowman v. PHP Cos., Inc., No. CIV.A.3:04-114, 2005 WL 2993902, at *10 (E.D. Tenn. Nov. 8, 2005) ("Assuming that [the plaintiff] is owed more than he was compensated for his work for [the defendant], his remedy lies with a breach of contract claim and not a claim for conversion."); see also Phoenix Four Grantor Trust #1 v. 642 N. Broad St. Assocs., No. CIV.A.00-597, 2000 WL 876728, at *9 (E.D. Pa. June 29, 2000) ("[I]f a plaintiff's rights to property are defined by a contract with a defendant, then that plaintiff may not sue that defendant in tort for conversion of that property.") (citing Peoples Mortg. Co. v. Fed. Nat'l Mortg. Ass'n, 856 F. Supp. 910, 929-30 (E.D. Pa. 1994)).

In this case, the Court finds that Plaintiff has failed to state a claim for conversion. If, as she alleges, her wages were withheld without her consent, there may have been a claim for breach of an employment contract,[10] but Plaintiff did not have a sufficient property interest in the money to sustain a cause of action for conversion. Defendants' Motions to Dismiss Plaintiff's conversion claim are granted.[11]

H.    **Plaintiff's Request for Punitive Damages**

The Second Amended Complaint requests punitive damages in conjunction with

---

[10]  Despite amending her Complaint twice, Plaintiff has failed to include a claim for breach of contract.

[11]  Plaintiff's alternative argument – that some class members satisfied the "property interest" requirement of a conversion claim because they contributed money that had already been paid to them – also lacks merit. If certain class members willingly gave their money to Defendants, then it cannot be said that their property was taken without their consent.

Plaintiff's allegations. (Sec. Am. Compl. ¶¶ 65-67.) Defendants Staley and Zappile have moved to dismiss this request. (Def. Staley's Mem. Supp. Mot. Dismiss 19; Def. Zappile's Mem. Supp. Mot. Dismiss 11-12.) Because Plaintiff has failed to state a claim upon which relief may be granted, there cannot be an award of any damages, punitive or otherwise. The Motions to Dismiss Plaintiff's request for punitive damages are granted.

## I.      Defendants' Remaining Arguments

In support of their Motions to Dismiss, Defendants raise various defenses pertaining to sovereign and qualified immunity. (See Def. PHA's Mem. 29-30, 32-40; Def. Staley's Mem. Supp. Mot. Dismiss 13-14, 15, 18; Def. Zappile's Mem. Supp. Mot. Dismiss 12-15; Def. Leithead's Mem. Supp. Mot. Dismiss 16-17; Def. Greene's Mem. Supp. Mot. Dismiss 19-24, 29-30.) In addition, Defendant Staley seeks dismissal of the claims against her in her individual capacity. (Def. Staley's Mem. Supp. Mot. Dismiss 14-15.) Defendant Leithead argues that the claim against him in his official capacity should be dismissed as redundant, and that Plaintiff's § 1983 and conversion claims against him are barred by the statute of limitations. (Def. Leithead's Mem. Supp. Mot. Dismiss 8-11.) Finally, Defendant Greene has moved to dismiss Plaintiff's request for an injunction. (Def. Greene's Mem. Supp. Mot. Dismiss 30-31.) Because the Court finds that Plaintiff has failed to state a claim against any Defendant, it declines to address these remaining arguments.

## IV.      CONCLUSION

For all of the foregoing reasons, the Court finds that Plaintiff has failed to state a claim upon which relief can be granted. With regard to her constitutional claims, she has failed to allege that she was compelled to speak in a manner that violated her First Amendment rights, that

her property was appropriated for public use in violation of the Takings Clause of the Fifth

Amendment, or that a fundamental right was infringed in violation of the Due Process Clause of

the Fourteenth Amendment.  Furthermore, she has not established that she has a private right of

action under the Moving to Work Demonstration Program.  Next, her claim under Pennsylvania's

Wage Payment and Collection Law fails because her employer, Defendant PHA, is a municipal

corporation which is not subject to the law.  Finally, Plaintiff did not have a sufficient property

interest in her unpaid wages to sustain a conversion claim, and she has conceded to dismissal of

her claim under the Anti-Macing Act.  In the absence of any cognizable claim for relief, Plaintiff

is not entitled to punitive damages.  The Motions to Dismiss filed by Defendants PHA, PIAHP,

TSSI, Greene, Rosenthal, Dorn, Zappile, Coney, Leithead, Carter, and Staley are granted.

An appropriate Order follows.